**UNITED STATES of America, Appellant,**

v.

**MINNESOTA MINING AND MANUFACTURING COMPANY et al., Appellees.**

No. 76–1730.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 8, 1976.

Decided March 3, 1977.

Rehearing Denied April 22, 1977.

---

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for appellant; Gilbert E. Andrews, Robert E. Lindsay, Daniel F. Ross, Attys., Washington, D.C., Robert G. Renner, U. S. Atty., Minneapolis, Minn., on brief.

Lawrence J. Hayes, St. Paul, Minn., and G. Alan Cunningham, Minneapolis, Minn., for appellees; Garrett E. Mulrooney, R. Scott Davies, Douglas W. Thomsom and Jack S. Nordby, St. Paul, Minn., on brief.

**1108**

Before GIBSON, Chief Judge, HEANEY and HENLEY, Circuit Judges.

GIBSON, Chief Judge.

The Government appeals[1] from a judgment of the District Court[2] dismissing a three-count indictment charging Minnesota Mining and Manufacturing Co. (3M) and two of its principal officers, Bert S. Cross and Irwin R. Hansen, with violating various tax-related statutes. Count I charged the defendants with violating 18 U.S.C. § 371 (1970) by conspiring to defraud the United States and to interfere with the functions of the Internal Revenue Service from 1963 to 1969. This count charged defendants with engaging in an illegal scheme of using 3M monies to create a secret campaign contribution fund and improperly deducting payments into the fund as legitimate business deductions on 3M's corporate income tax returns. Counts II and III of the indictment charged 3M and Hansen with filing false corporate income tax returns in 1968 and 1969, respectively, in violation of 26 U.S.C. § 7206(1) (1970).

The key issue on this appeal is whether a negotiated agreement between the Watergate Special Prosecutor's Force (WSPF) and 3M, which predated the instant indictment, precludes prosecution of 3M and its officers for alleged criminal tax violations arising out of the illegal corporate campaign contributions. The agreement in question allegedly was reached in 1973 after 3M and some of its high echelon officers voluntarily admitted to WSPF that 3M had made illegal political contributions. As a result of this voluntary admission, it was subsequently agreed that 3M and its chief executive officer, Harry Heltzer, would each plead guilty to a misdemeanor violation of 18 U.S.C. § 610 (Supp. V, 1975) for an illegal $30,000 political contribution to the Finance Committee to Reelect the President. Defendants in the present action contend that the guilty pleas of 3M and Heltzer were to be fully dispositive of all

federal criminal charges, including criminal tax violations, against 3M and its officials. The Government strongly disputes this contention and asserts that there was never any representation or agreement foreclosing the prosecution of defendants for criminal tax violations.

The District Court reviewed the conflicting evidence presented at the four-day hearing on defendants' motions to dismiss the indictment and, adopting the defendants' argument, found the parties had agreed that the guilty pleas were to be fully dispositive of all criminal matters arising out of the illegal campaign contribution scheme. The court concluded that the Government breached the agreement by filing the present indictment against defendants and dismissed the indictment.

I

Our primary function is to ascertain whether the District Court's factual findings derive adequate support from the record. The testimonial and documentary evidence offered by the respective parties to show what terms were embodied in the unwritten agreement is controverted and ambiguous. It is indeed unfortunate that representatives of WSPF and 3M failed to record any mutual understanding relating to what 3M and its officials were entitled to receive as a *quid pro quo* for the pleas of guilty on the 18 U.S.C. § 610 charges. The fact remains, however, that the parties are at odds as to whether or not the agreement relieved 3M and its officials of all criminal liability stemming from the illegal political contribution scheme. The parties are then relegated, by necessity, to a judicial evaluation of the now disputed agreement. Concededly an agreement, not a plea bargain, was made to forego certain criminal prosecutions arising out of 3M's campaign contribution scheme. In dispute is the extent of criminal immunity afforded 3M and its officials by the agreement.

---

1. This appeal is prosecuted pursuant to 18 U.S.C. § 3731 (Supp. V, 1975).

2. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

■ At the outset, we acknowledge that our standard of review is circumscribed by the nature of this case. As the parties concede, our review of the District Court's findings of fact is governed by the "clearly erroneous" test. *Kilcrease v. United States,* 457 F.2d 1328, 1331 (8th Cir. 1972); *see* Fed.R.Civ.P. 52(a). We are not permitted, under that standard, to simply displace the District Court's findings for our own. *Civella v. United States,* 509 F.2d 896, 898 (8th Cir. 1975). The factual findings of the District Court are to be upheld unless, after a review of the entire record, this court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Particularly where the testimonial evidence is conflicting, as here, deference must be accorded the District Court's ability to observe the demeanor of the witnesses and to weigh the credibility of their testimony. Cognizant of these limitations on our review, we will concisely recount the relevant facts adduced in the trial court proceedings and determine whether the factual findings of the District Court are clearly erroneous.

In 1973, WSPF was engaged in the investigation and prosecution of those who had allegedly made illegal political contributions during the 1972 Presidential campaign. On July 6, 1973, Special Prosecutor Archibald Cox issued a press release encouraging corporations to voluntarily advise WSPF of any illegal political contributions paid out of corporate monies during the campaign. As an incentive to corporate acknowledgement and disclosure of political contribution misdeeds, it was announced that the corporation's "voluntary acknowledgement will be considered as a mitigating circumstance in deciding what charges to bring." Soon after this announcement, the 3M Executive Committee was apprised that 3M may have participated in illegal campaign contribution practices in previous years. An internal investigation was undertaken and an illegal political contribution fund, established and maintained with 3M's pecuniary resources and administered by 3M officials, was discovered.

On August 16, 1973, 3M voluntarily disclosed to WSPF that 3M corporate funds had been involved in a $30,000 illegal contribution to the Finance Committee to Reelect the President in 1972. A series of meetings and communications then ensued between officials of WSPF and 3M. At the initial meeting on August 23, 1973, WSPF attorneys described the general policy considerations which would govern WSPF's disposition of 3M's case. No commitments or promises were forthcoming at that meeting. In subsequent interviews with 3M officials, WSPF officials became apprised of the nature and extent of 3M's illegal campaign contribution scheme, which covered hundreds of illegal contributions. The 3M officials disclosed that 3M funds were deposited into a Swiss bank account under the guise of prepaid insurance premiums. 3M officials periodically withdrew various sums from the account for the purpose of making illegal campaign contributions. In 1967, the bogus insurance premium scheme was abandoned and, instead, 3M officials implemented a plan to pay inflated fees to a foreign consultant, Dr. L. Gutstein, who would rebate a portion of the fees to 3M. These rebates generated a substantial amount of unreported cash which was contributed to various political causes. Both WSPF and the Internal Revenue Service were informed that the amounts attributed to false insurance premiums and Gutstein's fees were deducted from 3M's corporate income tax returns.

On October 3, 1973, WSPF officials informed 3M that they had decided to charge 3M and Heltzer each with a one-count misdemeanor violation of 18 U.S.C. § 610. A 3M attorney, Charlton Dietz, testified that he was informed during a telephone conversation on October 3 with a WSPF attorney, John Koeltl, that the guilty pleas of 3M and Heltzer would be fully dispositive of all federal charges. A marginal notation [3] on Deitz's written memorandum of that call is

---

3. Dietz's handwritten notation was inserted after this memorandum had been typed.

supportive of this claim. Koeltl disputes that he made such a representation. Dietz and another 3M attorney, Leonard Keyes, testified that they attended a meeting with WSPF officials on October 8, 1973, and were assured that the guilty pleas would be fully dispositive of all criminal charges arising from the illegal campaign contribution scheme. WSPF attorneys present at that meeting contradict this testimony, contending the agreement to forego further prosecutions related to all criminal charges except possible criminal tax violations.

3M and Heltzer pleaded guilty to the § 610 charges on October 17, 1973, in the United States District Court for the District of Minnesota.[4] During that proceeding, there was no mention of any prosecutorial agreement not to proceed criminally against 3M and its officials for tax irregularities in connection with the illegal corporate political contributions. In the following months, 3M satisfied one of the express conditions of the agreement by fully cooperating with WSPF in the investigation of illegal campaign contributions. In August, 1974, when the institution of criminal tax charges against the instant defendants seemed imminent, 3M officials asserted that their agreement with WSPF precluded this prosecution. However, the Government proceeded to secure the present indictment charging defendants with criminal violations stemming from the illegal tax deductions taken for the payments of the false insurance premiums and the Gutstein fees.

■ As the above facts demonstrate, there is a decided difference of opinion be-

tween the parties as to whether the guilty pleas of 3M and Heltzer were fully dispositive of all federal criminal charges against 3M and its officials. Both sides have been able to marshal facts to support their respective positions. The District Court, after reviewing all the evidence, found that the terms of the agreement between 3M officials and WSPF officials prevented the prosecution of defendants on criminal tax charges. Upon our independent review of the record, we do not find this conclusion to be impermissible or clearly erroneous. While various facts in the record are supportive of the Government's position,[5] the conclusion the Government urges this court to adopt is not, in light of the whole record, an inevitable one. Substantial evidence supports the defendants' position, as adopted by the District Court, that there was an agreement not to prosecute 3M and its officials for other criminal tax matters arising out of the illegal campaign contribution scheme[6] and that the Government breached the agreement by filing the present indictment. Therefore, we uphold the District Court's findings of fact in this regard.

## II

The Government contends that the District Court applied an improper legal standard in determining whether there was an agreement not to prosecute 3M and its officials. It is argued that the court erroneously used a subjective standard by considering only what one in the position of defendants would believe was covered by the guilty pleas. The Government contends that the

---

**4.** Fines of $500 and $3,000 on Heltzer and 3M, respectively, were imposed.

**5.** We are not oblivious to the evidence which, according to the Government, indicates that 3M's conduct after the guilty pleas were tendered was inconsistent with the position assumed by 3M in this case. Some of the evidence cited by the Government can be construed as consonant with the District Court's findings; some cannot. However, we do not review the case de novo and our factual inquiry ends when we find that the trial judge's findings of fact are not clearly erroneous. In light of the trial judge's supportable factual findings,

it may well be that he rejected the Government's proof or discounted its probative value.

**6.** The parties concede that 3M's civil tax liability is unaffected by the agreement, although there is apparently some dispute as to whether 3M is required to pay a fraud penalty under 26 U.S.C. § 6653 (1970), *as amended,* (Supp. V, 1975), and related statutes. In oral argument, it was represented that 3M's total civil tax liability, including assessments for fraud, may total $12 million. In this criminal case we, of course, do not determine whether the agreement forecloses the Government from recovering a fraud penalty from 3M.

court should have searched for an explicit agreement between officials of 3M and WSPF. A careful reading of the District Court's memorandum opinion indicates that the Government has not properly characterized the standard actually invoked by the District Court.

In its opinion, the District Court stated that the evidence viewed objectively would lead one in the position of the defendants to reasonably conclude that the guilty pleas would be fully dispositive of all federal criminal matters. The court then proceeded to make the following ultimate, and crucial, findings of fact:

> The court finds that the terms of the agreement were that the guilty pleas of 3M and its Chief Executive Officer to misdemeanor violations of 18 U.S.C. § 610 and continued cooperation by 3M in voluntarily disclosing its violations of campaign contribution laws were to be fully dispositive of all criminal matters arising from the illegal corporate contributions. The court further finds that the defendants acted in reliance upon the agreement to their detriment in performing the conditions required by the government. The government breached the agreement by filing the subject indictment.

We believe that the import of the District Court's findings of fact and conclusions of law is that the court rejected the Government's argument that 3M and its officers were not promised immunity from all future criminal prosecutions, including tax prosecutions, arising from the illegal contribution scheme. Instead, the court accepted the defendants' testimony that WSPF officials had explicitly promised that the guilty pleas of 3M and Heltzer were to be fully dispositive of all criminal matters stemming from the illegal campaign contributions. Accordingly, the District Court concluded that the agreement between 3M and WSPF actually contained an understanding whereby 3M and its officials would not be subjected to any future criminal prosecution in this matter.

■ In context, therefore, the standard employed by the District Court transcends the subjective standard that the Government contends was erroneously utilized by the court. The court did not extrapolate an "agreement" from the subjective expectations of defendants, cf. *Johnson v. Beto,* 466 F.2d 478, 480 (5th Cir. 1972), or from defendants' chimerical beliefs as to what was to be included in the agreement. Rather, the District Court based its ultimate findings of fact on actual promises made by WSPF officials and accepted by 3M officials on the subject of immunity from future criminal prosecutions. Finding that the parties had manifested assent to the inclusion of such a provision in the agreement and that the defendants fully discharged their obligations under the agreement,[7] the Government is bound to fulfill its responsibility under the agreement. *United States v. Carter,* 454 F.2d 426, 427–28 (4th Cir. 1972), *aff'd after remand,* 490 F.2d 1407 (4th Cir.), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974). As we have previously indicated, we believe the record supports the District Court's findings on this critical issue.

### III

■ Finally, the Government argues that the District Court imposed an inappropriate remedy by dismissing the indictment. It is contended that the alternative, and more acceptable, remedy is to permit 3M and Heltzer to withdraw their guilty pleas on the § 610 illegal campaign contribution charges and to plead anew. Also, it is argued that the court might order suppression of all inculpatory evidence secured from the 3M officials who relied on the agreement.

This case is *sui generis.* It does not involve a suspect who has been apprehended for allegedly committing a crime and, rather than face the prospects of an extended

7. It is conceded that 3M and its officials, by continuing to cooperate with WSPF in the investigation of illegal campaign contributions, fully complied with the letter and spirit of the agreement. *Compare United States v. Donahey,* 529 F.2d 831 (5th Cir. 1976).

**1112**

trial and a punishment of undetermined severity if convicted, decides to plead guilty to charges mutually acceptable to him and the prosecutor. Here, the Government urged corporations to voluntarily come forth and admit to and document illegal campaign contributions with the promise that such voluntary action might mitigate their criminal liability. 3M officials accepted this governmental overture and proceeded to fully divulge the nature and extent of their illegal activity. As we have indicated, the agreement between 3M and the Government contained a promise that the Government would forego future criminal prosecution of 3M and its officials for all matters arising out of the illegal political contribution scheme. This was not a traditional plea bargain arrangement in which the trial judge was a participant. Rather, it was a prosecutorial agreement, the inviolability of which rested completely in the province of the government prosecutors, who have the sole power and responsibility to institute criminal proceedings. *Cf. United States v. Hammerman,* 528 F.2d 326, 332 (4th Cir. 1975). The Government breached this promise by returning the present indictment against defendants. The remedy for the breach of this promise rests in the discretion of the trial court, *see Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and under the circumstances of this case we cannot say that the remedy of dismissing the indictment was either undue or an abuse of discretion.

The judgment of the District Court is affirmed.