UNITED STATES of America, Appellee,

v.

John G. MERZ, Appellant.

UNITED STATES of America, Appellee,

v.

HIGHLAND DUNES SCOTCH INVESTORS–FEDERAL, INC., Appellant.

Nos. 78–1218, 78–1220.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1978.

Decided Aug. 2, 1978.

Larry B. Leventhal, Minneapolis, Minn., for appellants; Samuel H. Bellman, and Rolfe A. Worden, Minneapolis, Minn., on brief.

Francis X. Herman, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief.

Before STEPHENSON, Circuit Judge, INGRAHAM,* Senior Circuit Judge, and HENLEY, Circuit Judge.

HENLEY, Circuit Judge.

In January of the current year John G. Merz and Highland Dunes Scotch Investors-Federal, Inc., a corporation controlled by Merz and his wife, were convicted in the United States District Court for the District of Minnesota (The Honorable Harry H. MacLaughlin, District Judge) of a violation of the federal mail fraud statute, 18 U.S.C. § 1341. Merz was sentenced to imprisonment for five years and was fined $1,000.00. The corporate defendant was fined $1,000.00.[1] The defendants appeal contending that their criminal prosecution was in violation of an agreement between them and the Securities & Exchange Commission (SEC) which resulted in the entry of a consent decree which enjoined the defendants from violating federal securities laws and which appointed a receiver to take charge of the affairs of Highland Dunes; the defendants also contend that evidence against them should have been suppressed. We affirm the judgment of the district court as to both defendants.

No claim is made by the defendants that they, along with Mrs. Merz and the corporation known as Temple Enterprises, Ltd.,[2] did not concoct and put into operation a fraudulent scheme which violated both the mail fraud statute and federal statutes regulating dealings in securities.[3] The scheme may fairly be described as follows.

In the early 1970's Highland Dunes purchased warehouse receipts covering quantities of whisky that was being aged in bonded warehouses in Scotland. Thereafter Highland Dunes began to advertise in a number of periodicals read largely by public employees, including military personnel, that substantial profits could be derived by investing money in scotch whisky and reselling it for higher prices as the aging process went on. Highland Dunes employed a number of sales people and referred to them as "account executives."

If an individual manifested interest in buying whisky, he would be contacted by

---

* The Honorable Joe M. Ingraham, United States Senior Circuit Judge for the Fifth Circuit sitting by designation.

1. The indictment consisted of eighteen counts. However, the defendants were put to trial on Count 15 only; the other counts were dismissed. Additional defendants in the case were Carla M. Merz, the wife of John G. Merz, and Temple Enterprises, Ltd., another Merz controlled corporation. Charges against Mrs. Merz and Temple were dismissed after Mr. Merz and Highland Dunes were convicted.

2. See n. 1, supra. Temple Enterprises was incorporated originally under the laws of the Island of Barbados; its place of incorporation was later changed to Grand Cayman Island.

3. Both of the corporations that have been mentioned appear to have been nothing but "fronts" for Mr. and Mrs. Merz. The operations of the corporations were centered in Minneapolis, Minnesota.

one of the sales people, and he might buy and pay for a quantity of whisky, receiving as evidence of his purchase a title document that amounted to a "security" within the meaning of federal securities statutes.

If a victim of the scheme in fact made an investment, it would be represented to him that Highland Dunes would assist him in making the resale on which his profit depended, and the victim would be induced to sign an instrument transferring the whisky that he had bought to an undisclosed transferee. Later, the instrument would be completed so as to identify Temple Enterprises as the purchaser. It goes without saying that Temple never paid the victim for the whisky. Thus, the unfortunate investor never received any of the whisky that he had bought and paid for and was never paid for the whisky that he sold.

As indicated, the whisky involved in the case was not fictitious. The record indicates that the defendants simply sold the same whisky again and again at increasing prices and received the proceeds of the sales. They never delivered or intended to deliver any of the product to the victims of the scheme, and it was never intended that Temple Enterprises or any other entity or individual would pay the victims for the whisky that they ostensibly sold to Temple.

Count 1 of the indictment identifies sixteen individual victims of the scheme, and there were doubtless many other victims. Count 15 of the indictment, on which count the defendants were tried and convicted, involved a mailing to Highland Dunes of a letter sent by a Dr. Thomas L. Smith of Avon Lake, Ohio.

The securities that were issued and transferred while the scheme was being carried out were not registered with the Securities & Exchange Commission and were not eligible for registration. The issuance of and dealings in those securities involved the use of the mails and other means and instrumentalities of interstate commerce.

The activities of Mr. and Mrs. Merz and their corporations came under investigation by the United States Postal Service in 1973, and those activities were also the subject of an investigation by the SEC. A suit for an injunction was filed by the SEC against the involved individuals and corporations in the United States District Court for the Southern District of New York in 1974; it was later transferred to the District of Minnesota and was assigned to the docket of Judge Miles W. Lord.

There is no question that the Postal Service and the SEC cooperated in the investigation. Throughout the investigation and the prosecution of the civil suit commenced by SEC, Merz was represented by capable counsel, and he and his attorneys were well aware of the fact that the Postal Service was conducting an investigation, and that there was a possibility of criminal charges being filed in addition to the civil proceedings that had been commenced.

The SEC suit was finally disposed of by a consent decree that was entered in May, 1977. The entry of that decree was preceded by long settlement negotiations between counsel for the defendants and counsel for the agency. In the course of those negotiations the primary concern of Mr. and Mrs. Merz seems to have been to avoid being required to disgorge the proceeds of their fraudulent scheme. They were aware at all relevant times that the investigation being conducted by the Postal Service was continuing, and that criminal prosecution was possible if not probable.

The consent decree permanently enjoined Mr. and Mrs. Merz and Highland Dunes from further violations of federal securities laws and regulations, and the district court appointed a receiver to take charge of the affairs of Highland Dunes and to do what he could to help investors recover part of their money. Merz and his wife were not required by the decree to make any disgorgement.

The indictment in the instant case was returned in November, 1977. The defendants were arraigned, pleaded not guilty, and were given time within which to file motions. A number of motions were filed, including motions to dismiss the indictment and to suppress evidence.

Judge MacLaughlin, to whom the case had been assigned, referred the motions to United States Magistrate J. Earl Cudd. In late November, 1977 Magistrate Cudd filed a number of reports containing his suggested findings of fact and conclusions of law and his recommendations to the effect that the most important motions filed by the defendants be denied. Specifically, the magistrate recommended that the motion to dismiss the indictment and to suppress evidence be denied. Over the objection of the defendants the district court accepted the findings, conclusions and recommendations of the magistrate.

On January 11, 1978 the case came on for trial. Prior to the commencement of the trial, a conference was conducted in chambers. In the course of the conference it was agreed that the charges against Mrs. Merz and Temple Enterprises would ultimately be dismissed, that Merz and Highland Dunes would be tried on Count 15 of the indictment only, that the other counts against them would be dismissed, and that trial by jury would be waived.

The trial was short and may have been designed to accomplish little save to preserve the appellate rights of Merz and Highland Dunes. Assuming the validity of the indictment and the admissibility of the government's evidence, the conviction of the defendants by the district judge was practically a foregone conclusion.

For reversal the defendants contend that the indictment should have been dismissed because the criminal prosecution amounted to a violation by the government of an alleged agreement that the entry of a consent decree in the SEC case would terminate all proceedings against the defendants and that they would not be prosecuted criminally for their violations of the law. It is further contended that the district court should have suppressed evidentiary materials furnished by the SEC to the Postal Service and to the United States Attorney, and should also have suppressed evidence that the government developed by means of a "mail cover" that had been established by the Postal Service in connection with its investigations of the Merz operations.

■ In the course of the proceedings in the district court the magistrate found that throughout the pre-indictment history of the case the defendants were well aware of the fact that they were being investigated by the Postal Service and that criminal prosecution was a distinct possibility, and that there was never any express or implied agreement between counsel for the defendants and counsel for the SEC that if the defendants would agree to the entry of a consent decree in the civil suit, they would not be prosecuted criminally.

■ As to the mail cover, the magistrate found that the cover was in force from April 1 through May 1, 1973. Such a cover does not involve any opening of the mail or inspection of the contents of envelopes. As stated by the magistrate, "when a 'mail cover' is requested, information such as addresses or return addresses from the face of the envelope, is recorded by postal authorities." And the magistrate found that there was no evidence that delivery of the defendants' mail was unduly delayed by the "cover."

We are satisfied that the findings and conclusions of the magistrate that the district judge adopted have substantial evidentiary support and are not clearly erroneous. The guilt of the defendants was adequately established by the evidence.

We see nothing in this case that would justify any finding that any agency of the government was guilty of any misconduct which would invalidate the prosecution and conviction of the defendants or that would require suppression of evidence. The case is readily distinguishable from *United States v. Minnesota Mining & Mfg. Co.*, 551 F.2d 1106 (8th Cir. 1977), and it is also distinguishable from *United States v. Fields*, S.D.N.Y. No. 76 CR 1022 CSH, opinion by District Judge Haight, appeal pending the Court of Appeals for the Second Circuit, No. 77-1342.

Affirmed.