**UNITED STATES of America, Appellee,**

v.

**James Francis McGOVERN, Appellant.**

No. 86–5318.

United States Court of Appeals, Eighth Circuit.

Submitted March 11, 1987.

Decided June 25, 1987.

Rehearing and Rehearing En Banc Denied Aug. 6, 1987.

---

John W. Lundquist, Minneapolis, Minn., for appellant.

Thomas B. Heffelfinger, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

The sole issue before us is whether James F. McGovern's plea agreement with the United States, which called for prosecution on a single count proposed by McGovern based on the violation of a banking

regulation with a sentence of one year, mandates dismissal of a later indictment and reversal of the judgment of conviction. The district court [1] accepted McGovern's guilty plea conditioned on the court's review of the pre-sentence investigation report, but at sentencing the district court rejected the plea agreement as against public policy and entered a not guilty plea. McGovern was later indicted on fourteen counts and convicted of two counts of securities fraud in violation of 15 U.S.C. §§ 77a, q, and x (1982) and 18 U.S.C. § 2 (1982) in a case tried to the bench on stipulated facts. On this appeal, he argues that the district court erred in denying his motion to dismiss the fourteen count indictment and in refusing to order specific performance of the plea agreement. We conclude that the plea agreement was implicitly conditioned on the district court's accepting its terms, and its rejection as against public policy relieved both sides of their obligations. Accordingly, we affirm the judgment of conviction.

McGovern practiced law with a St. Paul, Minnesota law firm that represented Flight Transportation Corporation (FTC) in offering securities to the public in 1979 and 1981. In late 1981, he joined FTC as its in-house legal counsel. FTC was closed down on June 18, 1982 when agents of the FBI and the Securities and Exchange Commission (SEC) obtained the appointment of a receiver and an injunction, and seized all of FTC's records. The SEC alleged that FTC, its subsidiaries, and William Rubin—FTC's President, Chairman of the Board and chief executive officer—had violated several provisions, especially the anti-fraud provisions, of the federal securities laws. A number of SEC actions and civil lawsuits ensued.[2] Also, criminal prosecutions were instituted against the officers of the corporation and others involved in the fraud.[3] Extended negotiations between McGovern and his lawyers and the United States Attorney resulted in an agreement in which McGovern would enter a guilty plea to a single count of violating 15 U.S.C. § 78g and Federal Reserve Board Regulation G, 12 C.F.R. § 207.3(a)(b) (1986). The agreement provided that in exchange for the government's promise to charge McGovern in a single-count indictment, McGovern would cooperate fully and truthfully with the United States in its investigation of FTC and would provide truthful testimony for grand and petit juries in ensuing prosecutions. The agreement stated that the sentence imposed would not exceed one year's imprisonment. The United States specifically agreed that it would make the extent of McGovern's cooperation known to the court at the time of sentencing and that it would not otherwise prosecute McGovern for any possible FTC–related, banking, or other offenses investigated by the United States for acts from 1977 through 1982.

In an affidavit filed with the district court, McGovern stated that to avoid any indictment alleging involvement in the overall FTC securities fraud, his lawyers "proposed (and ultimately drafted) the Regulation G offense" as provided in the plea agreement. In argument before the district court, McGovern's lawyer stated that the United States Attorney submitted the draft indictment to the SEC regional office

---

1. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

2. For a detailed history of the FTC litigation surrounding the 1982 FTC public offering, see *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128 (8th Cir.1984). *See also In re Flight Transp. Corp. Sec. Litig.*, 794 F.2d 318 (8th Cir. 1986). *cert. denied sub nom. Subclass IV v. Fox & Co.*, — U.S. —, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987); *In re Flight Transp. Corp. Sec. Litig.*, 764 F.2d 515 (8th Cir.1985); *SEC v. Flight Transp. Corp.*, 699 F.2d 943 (8th Cir.1983); *SEC v. Flight Transp. Corp.*, 699 F.2d 951 (8th Cir. 1983); *SEC v. Flight Transp. Corp.*, 693 F.2d 66 (8th Cir.1982).

3. William Rubin and Janet Karki, officers of FTC, were convicted by a jury on multiple fraud counts and sentenced to 35 years and 25 years imprisonment, respectively. The bookkeeper, Brian Miller, was convicted of two counts of securities fraud pursuant to a plea agreement, received a three year prison sentence and testified against Rubin and Karki. Gary Nelson, who was connected to FTC's Cayman Islands operation, was convicted by a jury of two counts of perjury and received a four year prison sentence.

for review. The single-count Regulation G indictment was then filed.

McGovern appeared before the district court on March 25, 1985 to enter a plea of guilty to the charge. The district court ascertained that McGovern had studied and discussed the matter with his attorney and was familiar with the precise charge to which he was tendering a plea. The district court read the plea agreement aloud, informed McGovern that the plea could not be accepted unless he was in fact guilty, and asked him to state how his conduct violated the statute.

McGovern told the court that when FTC was making its February 1981 public offering he had arranged for an acquaintance, Charles Engleson, to purchase 95,000 units of FTC securities by having Engleson write a check on an account with insufficient funds. McGovern then helped to arrange an $800,000 loan to Engleson, secured by a certificate of deposit purchased with the proceeds of the public offering, in order to cover the check. Thus, the loan to Engleson, which covered the Engleson check, was secured by the sale of the same FTC stock purchased in Engleson's name. McGovern went on to state that the $800,000 loan was substantially in excess of the stock's loan value. McGovern stated that at or before the time he made this arrangement he knew that, as to this type of security, he could not make a loan that exceeded fifty percent of the market value of the stock without reporting it to the Federal Reserve Board. Under examination by the Assistant United States Attorney, McGovern indicated that he had extensive experience in securities law, that for the past several years he had devoted one-fourth to one-half of his practice to the area of securities regulation, and that he represented FTC as its counsel in this 1981 securities offering. McGovern told the court that he was satisfied that he had violated Regulation G, and that he had done so intentionally and willfully.

At the end of the proceedings, the court found that the plea was made knowingly, voluntarily, and had a factual basis. The court accepted the plea subject to a review of the pre-sentence investigation report.

McGovern came before the district court for sentencing on May 17, 1985. As the government began to inform the court of the extent of McGovern's cooperation, the district court told the parties that it was not going to accept the plea. The court stated that, based on its review of the pre-sentence investigation report and the totality of the circumstances, the plea agreement was not in the public interest.[4] Thus, the court rejected the plea agreement and entered a plea of not guilty.

On July 29, 1985 the assistant United States Attorney appeared before the district court and moved to dismiss the one count indictment. He stated that after the court rejected the March 7, 1984 plea agreement the government had intended to proceed to trial on the single count indictment. In preparing for trial, however, the United States Attorney's office was informed by attorneys for the SEC that the FTC stock on which the Regulation G indictment was based did not satisfy Regulation G's "margin stock" requirement until October 1981, some six months after the violation alleged in the one count indictment. This failure of proof involved an essential element of the charge. The United States Attorney stated that after dismissal the government intended to reevaluate McGovern's involvement in the FTC case.

McGovern's counsel took the position that the March 7, 1984 plea agreement still bound the government and prevented it from seeking further indictments. He stated that McGovern was ready to go forward and try the case on the single charge and offered to stipulate that these securities were in fact margin securities. The government responded that it could not be forced to trial where there was in fact no violation. The district court approved the

---

4. At a later hearing on a different matter in the case, the court indicated that it had rejected the agreement because the one year sentence was inadequate. October 3, 1985 Hearing Tr. at 102–03.

dismissal of the indictment. *See* Fed.R. Crim.P. 48(a).

The United States then sought and obtained a fourteen count indictment against McGovern, and McGovern moved to dismiss it. After hearing lengthy arguments from both sides, the court denied the motion to dismiss the indictment. In its order, the district court recognized that McGovern had initially been charged with only one of many possible FTC–related offenses and that the offense charged was submitted by McGovern to the government for approval. The court acknowledged that before he was indicted McGovern had fulfilled, in part, his duties under the bargain by assisting the government in its FTC–related investigations. The court also accepted the government's position that FTC stock was not margin stock as required by Regulation G and therefore found that McGovern had not committed the offense charged.

The district court concluded that there had been a mutual mistake of the parties. Both parties to the plea agreement knew that the court could not accept McGovern's plea of guilty unless it was satisfied that the plea had a factual basis. *See* Fed.R. Crim.P. 11(f). When McGovern entered his plea, both the United States and McGovern had taken the position that the plea had a basis in fact. The court determined that both parties had been mistaken as to the requirements of the existing law, specifically 15 U.S.C. § 78g, and that their erroneous beliefs constituted a mutual mistake under the Restatement (Second) of Contracts (1981) §§ 151–154. The court concluded that it was not reasonable to allocate the risk of mistake to the government, that the contract was voidable, and that the superceding indictment should not be dismissed. The district court further stated that enforcing the agreement would preclude McGovern's being prosecuted for any FTC–related offense and that this would be contrary to the public interest.

The case was then submitted to the court on stipulated facts; the court found McGovern guilty of two counts of securities fraud under 15 U.S.C. §§ 77a, q and x and 18 U.S.C. § 2. The other twelve counts were dismissed. He was sentenced to a total of six years imprisonment and a $20,000 fine.

McGovern argues on appeal that the government must be bound by its agreement, that its enforcement is not prevented by the mutual mistake doctrine or by public policy, and that the agreement is essentially an extra-judicial nonprosecution agreement. We hold that the plea agreement bound the parties only until the district court rejected it, and thereafter the obligations of both sides were discharged. We also conclude that it would be against public policy to enforce this agreement, and we do not reach the issue of mutual mistake.

## I.

Contract principles often provide a useful means by which to analyze the enforceability of plea agreements and ensure the defendant what is reasonably due him in the circumstances. *See United States v. Baldacchino*, 762 F.2d 170, 179 (1st Cir.1985); *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir.1979); *cf. Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971) (applying contract principles to plea bargains). A plea agreement, however, is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system and requires the courts to exercise judicial authority in considering the plea agreement and in accepting or rejecting the plea. Under Rule 11 of the Federal Rules of Criminal Procedure, a court may reject a guilty plea in the exercise of its sound judicial discretion. *Santobello*, 404 U.S. at 262, 92 S.Ct at 498; *see also United States v. Randahl*, 712 F.2d 1274, 1275 (8th Cir.1983) (district court under no duty to approve a negotiated plea agreement); *United States v. Petty*, 600 F.2d 713, 713–14 (8th Cir.1979) (same); *In re Yielding*, 599 F.2d 251 (8th Cir.1979) (district court acted within its discretion in refusing to entertain all Rule 11(e)(1)(B) and (C) plea agreements as a policy and practice). An implicit condition of every plea agreement is its acceptance by the trial court. The Fifth Circuit discussed this

issue at some length in *United States v. Ocanas*, 628 F.2d 353 (5th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981), in which the court concluded:

> [T]he realization of whatever expectations the prosecutor and defendant have as a result of their bargain depends entirely on the approval of the trial court. Surely neither party contemplates any benefit from the agreement unless and until the trial judge approves the bargain and accepts the guilty plea. Neither party is justified in relying substantially on the bargain until the trial court approves it. We are therefore reluctant to bind them to the agreement until that time. As a general rule, then, we think that either party should be entitled to modify its position and even withdraw its consent to the bargain until the plea is tendered and the bargain as it then exists is accepted by the court.

*Id.* at 358; *see also United States v. Alvarado-Arriola*, 742 F.2d 1143, 1145 (9th Cir. 1984).

■ Of course, this does not render the agreement between the prosecution and the defendant meaningless. In an agreement that contemplates the defendant's pre-plea cooperation as well as his plea of guilty, the government must, unless and until the court rejects the plea, honor in good faith its obligations under the agreement. *Cf. Ocanas*, 628 F.2d at 358 ("A showing that the government has gained some unfair advantage over [the defendant] might [justify] a departure from the general rule."). Here, the government honored its obligations to McGovern. Before the court rejected McGovern's guilty plea, the government did not seek an indictment against McGovern for any other offenses, and at the time of sentencing it made McGovern's cooperation known to the court. Thus, the government fulfilled its part of the bargain.

■ Nonetheless, a significant benefit to the government in agreeing to forego prosecution on certain charges is that, in exchange, the government receives the certainty of the defendant's conviction on different, and probably lesser, charges. If the court rejects the plea agreement and enters a not guilty plea, the government loses the certainty of conviction for which it bargained and, consequently, should not be bound by its agreement to limit prosecution. Instead, when the plea is rejected, both the defendant and the prosecutor are placed in their respective pre-plea agreement positions. They may renegotiate a new agreement or proceed to trial.

McGovern argues that the way in which this agreement was drafted indicates that it was not intended to be a typical plea agreement subject to judicial review, but rather a pre-prosecution settlement agreement that was extra-judicial in nature. McGovern is correct in asserting that this agreement was not drafted in the typical fashion. Rather than procuring an indictment against McGovern for all possible offenses and then agreeing to drop certain counts, the government charged only the single offense suggested by McGovern. As part of the plea agreement, the government promised that it would "not otherwise prosecute [McGovern] for any possible FTC related, banking or other offenses." Designated Record at 4. McGovern argues that this promise constitutes an executive branch decision not to prosecute beyond the Regulation G offense. He asserts that despite the district court's rejection of the one year sentence limitation, the decision not to prosecute for other offenses is solely within the discretion of the United States Attorney's office and is not subject to judicial review. Thus, he reasons that the "limitation on prosecution" portion of the agreement could not have been rejected by the district court and that the government is still bound by that promise.

■ We do not believe that the unusual bargain struck between McGovern and the government changes this from a plea agreement to an extra-judicial, non-prosecution agreement. As the district court found, the principal benefits of the bargain to the government were McGovern's conviction and his cooperation, and the principal benefits to McGovern were the ability to plead guilty to a particular offense and

to receive a very limited sentence. *United States v. McGovern*, No. 3–85 CR 95 (D.Minn. Oct. 22, 1985) (memorandum order). The parties did not agree that McGovern's cooperation was sufficient consideration; certainty of conviction was also required. Under Rule 11 the court had to accept McGovern's guilty plea before the government could recognize a significant benefit of the bargain, namely, avoiding the risk of going to trial. McGovern recognizes this in his brief when he states:

> Neither the defense nor the government could be certain of the results had the original or any of the later charges proceeded to trial. The defense maintained that McGovern could not be convicted of any offenses. The government contended that he could be convicted of many. In a case as complex and subtle as this prosecution, there was significant risk to both sides in going to trial on any charge.

Appellant's Brief at 15.[5]

▪ Assuming that McGovern is correct in arguing that the reason the court found the agreement to be against public policy was the agreement's one year sentence. limitation,[6] the end result was still the rejection of the guilty plea and the entry of a plea of not guilty. This action materially altered the basis of the bargain and left the parties with no agreement to which there was mutual assent. We cannot bind either party to specific provisions in this agreement after the plea has been rejected.

The cases McGovern cites in which the courts dismissed indictments or otherwise specifically enforced government promises are inapposite because these cases either: (1) do not deal with plea agreements that required the court's acceptance under Rule 11, *see, e.g., Rowe v. Griffin*, 676 F.2d 524 (11th Cir.1982) (promise of immunity from prosecution in return for testimony); *Unit-*

ed States v. Rodman, 519 F.2d 1058 (1st Cir.1975) (promise to recommend non-prosecution in exchange for cooperation); *United States v. Sanderson*, 498 F.Supp. 273 (M.D.Fla.1980) (promise not to indict in exchange for cooperation); or (2) involve the breach of an agreement after the court has accepted the defendant's guilty plea. *See United States v. Minnesota Mining and Mfg. Co.*, 551 F.2d 1106 (8th Cir.1977) (defendants pleaded guilty, guilty plea was accepted by court, and government then procured indictment for other offenses in breach of the plea agreement); *United States v. Paiva*, 294 F.Supp. 742 (D.D.C. 1969) (same). McGovern has not cited a single case in which a prosecutor was held bound by promises made in a subsequently rejected plea agreement. We cannot equitably enforce the government's promise not to further prosecute McGovern when it can no longer take advantage of the certainty of conviction on the Regulation G offense. McGovern's offer to stipulate as to the margin securities element is simply an effort to have the government continue. a prosecution on an element it knows not to exist, and we should not countenance such a practice.

## II.

McGovern next argues that even if no agreement was reached, the district court was obligated to order specific performance of the government's promise in order to redress McGovern's detrimental reliance. He asserts that he submitted to extensive debriefing for a full year prior to entering his guilty plea, thereby providing the government with otherwise unavailable information concerning almost every aspect of the FTC case. In his affidavit, McGovern contends that as a result of this cooperation he has suffered substantial

---

5. McGovern pursued this argument to show that both sides were aware of the uncertainty of the existence of the "margin securities" element, and thus there was no mutual mistake that made the agreement voidable. In light of the basis of our holding, we need not reach the issue of mutual mistake. Nonetheless, McGovern's argument highlights the risk to the government in going to trial.

6. It is well within a trial court's discretion to reject a plea agreement if it believes the sentence to be inadequate based on the serious nature of the crime. *See Bonner v. Wyrick*, 563 F.2d 1293, 1298 (8th Cir.1977), *cert. denied*, 439 U.S. 913, 99 S.Ct. 286, 58 L.Ed.2d 260 (1978).

prejudice in that (1) the government gained a significant trial advantage against him because of his cooperation, (2) he was under constant stress during the one year cooperation period, and (3) he has lost credibility with his business associates and family because he advised them that he would not be indicted on any charges relating to the overall securities fraud. Thus, he contends that specific performance is required in his case because he could not be returned to his pre-plea agreement position. We reject this argument.

■■■■ As we previously stated, a defendant is not justified in relying substantially on the terms of the plea agreement until the trial judge approves it and accepts the guilty plea. *Alvarado-Arriola,* 742 F.2d at 1145; *Ocanas,* 628 F.2d at 358; *see also United States v. Coon,* 805 F.2d 822, 825 (8th Cir.1986). Moreover, even when the defendant has pleaded guilty in reliance on the government's promises and the plea has been accepted by the court, the decision as to the appropriate remedy for the government's breach—specific performance or withdrawal of the guilty plea—is one for the sound discretion of the trial court. *See Santobello,* 404 U.S. at 263, 92 S.Ct. at 499; *Mabry v. Johnson,* 467 U.S. 504, 510–11 n. 11, 104 S.Ct. 2543, 2548, n. 11, 81 L.Ed.2d 437 (1984). Thus, when the government breaches a plea agreement, the trial court may determine that the defendant's detrimental reliance requires that the government be held to its promises in order to promote fairness to the defendant and the interest of justice. *See Santobello,* 404 U.S. at 262, 92 S.Ct. at 499; *Minnesota Mining,* 551 F.2d at 1112. Likewise, when faced with a defendant's demand for specific performance where the court has rejected the agreement, a trial court must examine the equities of the particular case, considering the prejudice to the defendant, conduct of the government, and the public interest.

■■■ The most important factor in this decision is prejudice to the defendant. *See United States v. Holman,* 728 F.2d 8C9,

813 (6th Cir.), *cert. denied,* 469 U.S. 983, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984); *cf. United States v. Mack,* 655 F.2d 843, 848 (8th Cir.1981) (analyzing prejudice to the defendant in deciding upon the appropriate remedy). Here, even though allowing both parties to proceed to trial did not place McGovern in the status quo in the sense that he could retrieve his year of cooperation with the United States Attorney, it did restore his constitutionally significant right to a fair trial. *See Mabry,* 467 U.S. at 507–09, 104 S.Ct. at 2546–47; *Coon,* 805 F.2d at 825. Neither the statements McGovern made during the course of his plea negotiations and cooperation, nor any fruits of those statements, were used against him at trial. *Coon,* 805 F.2d at 825. Since the district court's refusal to specifically enforce the plea agreement did not deprive McGovern of due process in his subsequent trial on the fourteen count indictment, we cannot say that the prejudice to him was such that specific performance was constitutionally mandated.

The district court's memorandum opinion elaborately analyzes the other equities involved in the context of its mutual mistake analysis in reaching the conclusion that the agreement is void.[7] We believe that these factors are equally relevant in deciding that specific performance is not called for in this instance.

The court implicitly found that the government was free from misconduct when it noted that "[t]he government investigated the offense prior to entering into the plea agreement, but did not discover that it could not prove one of the elements of the offense until immediately before trial." *McGovern,* slip op. at 14. The court found that "both McGovern and the government were mistaken as to the requirements of the existing law," *id.* at 10, in that at the time of the plea, both parties believed that McGovern had committed the offense charged in the original indictment when in fact, because the margin securities element was lacking, he had not. The court also concluded that it was

---

7. The district court also included these reasons in a more summary fashion to support its alter-
native holding that it would be against public policy to enforce the agreement.

unreasonable to allócate the risk of the mistake to the government in these circumstances since McGovern, an experienced securities lawyer, suggested the charged offense and was in a good position to know whether his conduct had actually violated the applicable statute and regulation. *Id.* at 14.

Finally, the court determined that it was against the public interest in fair and just criminal proceedings to enforce an agreement that would result in McGovern's avoiding prosecution altogether, especially since this result was not one contemplated by the parties in the original agreement:

> If this court were to enforce the plea agreement, McGovern would not be held accountable for any of his FTC related conduct. He could not be convicted of the offense charged because he did not commit it, and he could not be charged with any other offense. On the other hand, although the government has had the assistance of McGovern in investigating FTC, it will not be able to obtain a conviction of McGovern for any of his conduct.

*Id.* at 12–13.

Once due process has been satisfied, specific performance is a discretionary remedy. One reason for denying the specific performance of a contract is that the compelled act or forbearance would have an adverse effect on some aspect of the public interest. *See* Restatement (Second) of Contracts § 365 comment a (1981). Here, specific performance would be detrimental to the public interest in the fair and effective administration of justice. McGovern has been found guilty on two counts of securities fraud. Specific performance would mean reversing this otherwise valid conviction and dismissing the fourteen count indictment. It would also effectively preclude the government from prosecuting McGovern for his involvement in the fraud. This remedy would bestow a windfall on McGovern beyond that for which he originally bargained and would not square with the just administration of criminal law. We cannot say that the court abused its discretion in refusing to enforce the rejected plea agreement.

In conclusion, we reiterate the importance of the district court's findings as to the unique circumstances surrounding this plea agreement. The suggestion of the charge by the accused, an experienced lawyer specializing in securities law, and the government's agreement to the one year sentence are significant facts. We hold that the district court's rejection of the plea agreement relieved both parties of their plea agreement obligations and, thus, that the district court did not err in refusing to dismiss the fourteen count indictment.

Accordingly, the judgment is affirmed.