**UNITED STATES of America, Plaintiff,**

v.

**Sol ROBBINS et al., Defendants.**

**Crim. No. CR 71-81.**

United States District Court, N. D. Ohio, W. D.

Feb. 15, 1972.

Darrell McGowen, Trial Atty., Dean P. Vernon, Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

Dan H. McCullough, Toledo, Ohio, for defendants.

MEMORANDUM

DON J. YOUNG, District Judge.

In this matter the defendant Sol Robbins was indicted for conspiring with Irwin Fruchtman and Hyman Sternman to defraud the United States in the collection of income taxes and to commit the offense of wilfully attempting to evade and defeat a large part of the income taxes due from the Donovan Wire and Iron Company.

This defendant has filed a complex motion dealing with numerous matters, only the first three branches thereof being involved in the present proceeding.

The first branch seeks the dismissal of the indictment against this defendant. The second branch seeks the suppression and return to this defendant of certain documentary evidence produced by this defendant before the Grand Jury in August, 1967. The third branch seeks the suppression of the testimony of this defendant before said Grand Jury.

An evidentiary hearing was had on these matters on Wednesday, January 26, 1972, which consumed the entire day.

Basically, this defendant contends that before he appeared before the Grand Jury to produce certain books and records, in response to a subpoena *duces tecum*, his attorney conferred with the Government's attorneys. As a result of that conference, this defendant claims that it was agreed that if he waived his privileges against self-incrimination, he would be granted immunity from prosecution, and the records he produced would not be turned over to the Internal Revenue Service in New York, where he resides. He thereupon produced the records and testified freely before the Grand Jury.

The Government denies that any agreement of any kind was made with the defendant. It also denies that there is any such "informal immunity" as this defendant claims, asserting that immunity from prosecution in exchange for waiving privileges and testifying before a grand jury can only be granted by following certain complicated and formal procedures.

Thus the first question to be determined is whether there is any such thing as an "informal" grant of immunity. To accept the Government's contention that there is not requires the Court to determine that the discretion historically exercised by a prosecutor to prosecute or decline to prosecute an accused person is one which is very narrow and limited in scope. Traditionally, the courts have been loathe to venture into any questioning of the prosecutor's discretion in this area. Practically, this discretion is necessarily a very broad one.

Those who have practiced law outside of metropolitan areas recognize that attorneys, both in civil and in criminal practice, and whether for the government or for private individuals, must be able to, and do, rely upon each other's assurances given by word of mouth. The statute of frauds and the parol evidence rule do not apply in this area, nor is it necessary that they should, because the attorney who does not honor his commitments soon finds himself involved in large extra amounts of work preparing written agreements, and has much difficulty getting routine matters settled.

Some of these problems were revealed in the testimony of the defendant's attorney, who, as a result of his experience in this case, has found himself afraid to agree to waive objections of his clients to testifying in other governmental investigations unless all of the formalities contended for by the Government in this case are complied with.

It is clear that there has always been the opportunity for the particular prosecutor to exercise his discretion, and to use that discretion informally by oral agreement with defense counsel, as well as by formal proceedings. In other words, government attorneys can and do make informal grants of immunity.

Thus the second question is whether the evidence sustains this defendant's contention that there was an informal grant of immunity to him in consideration of his testifying fully before the Grand Jury.

It is clearly apparent from the record that there was a considerable lack of communication between the Government's attorneys and the attorney for

this defendant. There is a substantial disagreement among the various witnesses as to what actually took place on the date in question. This is not surprising, since it was well over four years ago, and the witnesses had their minds on other matters at the time. Without going into a detailed analysis of the testimony of the witnesses, which was positive on the part of this defendant's witnesses, and mainly negative on the part of the Government's witnesses, this Court has no doubts that there was in fact an agreement granting this defendant immunity from prosecution.

The matter which is not so clear, however, is what prosecution this defendant was concerned about being immune from.

■ As previously stated, there was an obvious lack of real communication among the people involved. From the evidence adduced at the hearing, it appears that this defendant was concerned about his own personal tax problems in New York, while the Government was primarily interested in the tax problems of the co-defendant Fruchtman and the Donovan Wire and Iron Company. The Court concludes that at the time of the agreement, neither of the parties was seriously considering this defendant as a possible defendant in the matters involving the defendant Fruchtman and his company. The Government wanted this defendant's testimony and records to secure an indictment of his present co-defendants. This defendant did not want to get into an untenable position with respect to his own tax problems. The only reasonable conclusion is that this defendant is not entitled to immunity from the present prosecution, and that

branch of his motion seeking to have the indictment dismissed will be overruled.

■ However, in spite of the failure of the parties to have a meeting of the minds upon immunity from prosecution in the present action, this defendant is entitled to some relief upon the other branches of his motion. It is clear from the evidence at the hearing that this defendant did not even get what he bargained for, for his records, at least, were turned over to the Internal Revenue Service agents in New York, and used against him there.

It would be highly unconscionable to permit the Government to induce this defendant to waive his privileges against self-incrimination by ambiguous assurances, and then to use his testimony against him in the present prosecution. Thus the third branch of the defendant's motion, to suppress his testimony before the Grand Jury in August, 1967, will be granted.

■ The second branch of this defendant's motion presents other problems. In that, he seeks the suppression of documents and copies thereof produced before the Grand Jury in response to the Government's subpoena *duces tecum.* Most, if not all, of this material, consisted of records of this defendant's corporation, S. Robbins Enterprises, Inc. This defendant could not claim his personal privilege as a defense against an order to produce the records of a corporation, regardless of his interest in the corporation. As pointed out in this Court's previous memorandum, this defendant has not contended that any of the materials produced were his personal documents. Hence, the second branch of this defendant's motion must be overruled.