UNITED STATES of America, Plaintiff,

v.

MINNESOTA MINING AND MANUFAC-
TURING COMPANY et al., Defendants.

No. 3–75 Cr. 21.

United States District Court,
D. Minnesota,
Third Division.

July 23, 1976.

John J. Kilgariff, and Jerrold L. Kluger,
Sp. Attys., Dept. of Justice, Washington, D.
C., for plaintiff.

G. Alan Cunningham, Faegre & Benson,
Minneapolis, Minn., and R. Scott Davies,
Briggs & Morgan, St. Paul, Minn., for de-
fendant Minnesota Mining and Manufactur-
ing Co.

Douglas W. Thomson, and Jack S. Nord-
by, Thomson, Wylde & Nordby, St. Paul,
Minn., for defendant Bert S. Cross.

Lawrence J. Hayes, and Garrett E. Mul-
rooney, Maun, Hazel, Green, Hayes, Simon
& Aretz, St. Paul, Minn., for defendant
Irwin R. Hansen.

## MEMORANDUM AND ORDER

ALSOP, District Judge.

This case, arising out of a time period
known as the Watergate era, presents the
issue of whether the indictment against the
defendants should be dismissed based upon
an agreement between defendants and the
Watergate Special Prosecutor Force
(WSPF), a representative of the United
States government.

Count I of the three count indictment
charges Minnesota Mining and Manufactur-
ing Company (3M) and two of its former
officers, Bert S. Cross and Irwin R. Hansen,
with conspiring to defraud the United
States by impeding the functions of the
Internal Revenue Service (IRS) in violation
of 18 U.S.C. § 371. Counts II and III
charge defendants 3M and Hansen with
wilfully making and subscribing a corporate
tax return for the years 1968 and 1969
which they did not believe to be true and
correct as to every material matter in viola-
tion of 26 U.S.C. § 7206(1) and 18 U.S.C.
§ 2.

Presently before the court are the mo-
tions of 3M to dismiss the indictment based
on an agreement not to prosecute or to
dismiss the indictment based on discrimina-

tory prosecution. Similar motions are before the court on behalf of defendant Cross as to Count I of the indictment. Defendant Hansen presently has before the court a motion to dismiss the indictment based on an agreement not to prosecute or, in the alternative, to suppress evidence. Not before the court at this time are the motions of the defendants to dismiss the indictment based on defects in pleading and the motion of defendant Cross for relief from prejudicial joinder.

The defendants contend that an agreement was reached with the United States government whereby the guilty pleas of 3M and its Chief Executive Officer to misdemeanor violations of 18 U.S.C. § 610 and continued cooperation by 3M in voluntarily disclosing its violations of campaign contribution laws would be fully dispositive of all criminal matters arising from the illegal corporate contributions. It is defendants' contention that the filing of the indictment in this action amounts to a unilateral breach of that agreement by the government and that the indictment should therefore be dismissed. The government argues in response that the agreement not to prosecute extended only to other violations of 18 U.S.C. § 610.

Without attempting to be exhaustive, the court will highlight some of the facts presented at the evidentiary hearing held before the court on March 1–4, 1976.

On July 6, 1973, Archibald Cox, Watergate Special Prosecutor, issued a press release announcing the voluntary disclosure by American Airlines of illegal corporate campaign contributions. Cox commended the disclosure by American Airlines and encouraged other corporations to similarly disclose such violations.

> . . . . 'We are not adopting any blanket policy towards either corporations or individual officers; but it is fair to say that when corporate officers come forward voluntarily and early to disclose illegal political contributions to candidates of either party, their voluntary acknowledgement will be considered as a mitigating circumstance in deciding what charges to bring.' . . .

Defendant Ex. 3 (Press Release, July 6, 1973). A similar announcement was made concerning Ashland Oil, Inc., by Cox in a later press release. Defendant Ex. 4 (Press Release, July 20, 1973).

On August 16, 1973, 3M disclosed to the Special Prosecutor's Office that it had made a $30,000 contribution to the Finance Committee to Reelect the President which involved the use of corporate funds. This acknowledgement was followed by a meeting in Washington on August 23, 1973, between Charles Ruff and John Koeltl, attorneys for the WSPF Office, and Robert Tucker, then Vice-President and General Counsel of 3M, Charlton Dietz, then Assistant General Counsel of 3M, and Leonard Keyes, outside counsel retained by 3M. It appears undisputed that this was an exploratory meeting between the parties and that no final agreement was reached as to the disposition of the 3M disclosures. The 3M representatives were advised that six factors would be considered in deciding what charges to bring against 3M: the size of the corporation; the size of the contributions; whether the contributions were taken as tax deductions; the role of corporate officers in obtaining the funds; whether *quid pro quo* was involved; and the history of the activity within the corporation.

On September 5, 1973, defendants Hansen and Cross, and Harry Heltzer, former Chief Executive Officer of 3M, notified the IRS that corporate funds used for political contributions had been taken as tax deductions on 3M's tax returns.

A second meeting was held in Washington on September 6, 1973, between Tucker, Dietz, Keyes, Heltzer, and Wilbur Bennett, Director of Civil Affairs for 3M, and Koeltl, Thomas McBride, and James Quarles, attorneys for the WSPF Office. Discussions took place concerning the charges that would likely be brought against 3M and its chiefly responsible corporate official and interviews of Heltzer and Bennett were conducted by the WSPF attorneys.

On September 19th and 26th, 1973, two further meetings were held. On the 19th, WSPF attorneys Quarles and Roger Witten interviewed Hansen and Tucker. Attorneys Dietz, Keyes, and Joseph Maun, were present for the interviews. Quarles' file memorandum of the meeting indicates that: "[p]rior to the commencement of the interview Mr. Henson [sic] was advised that we were investigating possible violations of 18 U.S.C. Sec. 610 and 18 U.S.C. Sec. 611, the Federal Corrupt Practices Act, the Federal Election Campaigns Act, and any other possible violations of federal criminal laws." Defendant Ex. 5, at 1. On the 26th, attorneys Dietz and Keyes met with WSPF attorney Koeltl for the purpose of delivering to Koeltl certain corporate documents concerning the political contributions. "Koeltl indicated that the present inclination of the office was to charge a volunteer such as 3M with a corporate violation of Section 610, and to charge the primarily responsible corporate official . . . with a misdemeanor violation of Section 610 and to bring to the court's attention the fact of the cooperation by the corporation and the official." Defendant Ex. 6, at 2 (Koeltl memorandum).

A government Prosecutive Memorandum was transmitted to Archibald Cox on October 3, 1973. The Memorandum contained the following recommendation:

There are no aggravating circumstances to distinguish 3M from other volunteers. While the Company was late in its disclosure, it did disclose its contribution to us before being contacted by this office or any agency acting at our direction. There is no indication that the contribution was given with any intention of influencing government action, and the officials of 3M have been fully cooperative and truthful in disclosing the circumstances of the 1972 contribution to FCRP and the prior contributions by the corporation.

Consequently, in accordance with our prosecution policy, and consistent with the manner in which we intend to treat other corporations and officials who voluntarily disclose such illegal contributions, and where there are no aggravating circumstances, we should charge the corporation with a one count misdemeanor violation of 610. Similarly, we should charge Harry Heltzer as the primarily responsible corporate official with a non-willful, misdemeanor violation of Section 610. At sentencing, we should bring to the attention of the court Heltzer's voluntary disclosure and his cooperation with our investigation and his [sic] as mitigating circumstances.

Defendant Ex. 8, at 9–10. The decision to prosecute 3M and Heltzer for § 610 misdemeanor violations was communicated by Koeltl to Dietz during a telephone conversation on October 3, 1973. Dietz testified that a few minutes after this conversation he called Koeltl to ask him, *inter alia*, whether the misdemeanor charges would end the case for 3M and was told that "this would be fully dispositive of criminal charges." Transcript p. 103.

A follow-up meeting was held on October 8, 1973, between Dietz and Keyes for 3M and Koeltl and McBride for the WSPF to discuss the decision with respect to the charges to be brought against 3M and Heltzer and to work out details for the entry of guilty pleas by these defendants. Dietz and Keyes testified that they interpreted the comments of the WSPF attorneys to mean that these pleas would be fully dispositive of criminal charges.

Guilty pleas were entered by 3M and Heltzer to one-count misdemeanor violations of 18 U.S.C. § 610 on October 17, 1973, in the United States District Court for the District of Minnesota.

On January 15, 1974, Bennett and Tucker appeared before a grand jury investigating the recipients of corporate contributions. Their appearance was a continuation of the agreement to cooperate with the WSPF Office throughout all Watergate matters.

The parties are in basic accord that the controlling law in the area of an agreement not to prosecute is contained in *United States v. Carter*, 454 F.2d 426 (4th Cir. 1972). In *Carter* the court stated:

. . . [W]e conclude that if the promise was made to defendant as alleged and defendant relied upon it in incriminating himself and others, the government should be held to abide by its terms. *United States v. Paiva*, 294 F.Supp. 742 (D.D.C.1969), so holds: 'if, after having utilized its discretion to strike bargains with potential defendants, the Government seeks to avoid those arrangements by using the courts, its decision so to do will come under scrutiny. If it further appears that the defendant, to his prejudice, performed his part of the agreement while the Government did not, the indictment may be dismissed.' 294 F.Supp. at 747. . . .

*Id.* at 427–28. Later, the court concluded: If the promise was made, relied upon and breached as alleged, the indictment should be dismissed; otherwise, the judgment may be reinstated.

*Id.* at 428.

The court will not attempt, in this memorandum, to reconstruct each meeting and conversation involved in the discussions and negotiations between 3M and the WSPF nor attempt to reconcile and explain the conflicting testimony and documentary exhibits. It is unfortunate for all parties, and indeed for the public, that the parties' representatives did not more clearly and carefully delineate and document the agreement that was in fact reached. Perhaps, in part, this lack of clarity may be explained by the nature of the times and the import of the decisions made in trying circumstances for the principals on both sides. It is undisputed that an agreement and bargain was struck; the dispute lies in the nature and extend thereof. This court's responsibility is to resolve that dispute from the conflicting evidence before it.

Upon careful analysis of the evidence and arguments presented, the court concludes that the totality of the conduct and circumstances, viewed objectively, would lead one in the position of the defendants to reason-ably conclude that the guilty pleas and full cooperation would be fully dispositive of all criminal matters arising out of the illegal political contributions. The court finds that the terms of the agreement were that the guilty pleas of 3M and its Chief Executive Officer to misdemeanor violations of 18 U.S.C. § 610 and continued cooperation by 3M in voluntarily disclosing its violations of campaign contribution laws were to be fully dispositive of all criminal matters arising from the illegal corporate contributions. The court further finds that the defendants acted in reliance upon the agreement to their detriment in performing the conditions required by the government. The government breached the agreement by filing the subject indictment. The indictment will therefore be dismissed.[1]

The court is concerned not only with fairness to individual defendants and the protection of their rights, but also with the integrity of our system of criminal justice. In this court's view, it would be inimical to the integrity of that system for the government to enter into an agreement under which a plea of guilty to a specific charge is to dispose of all criminal matters under scrutiny and thereafter be permitted to pursue a criminal prosecution that the parties intended to be included in their original agreement.

Upon the foregoing,

IT IS ORDERED That the motions of the defendants to dismiss the indictment based upon the agreement not to prosecute be and the same hereby is granted and the indictment is dismissed.

---

1. In light of this ruling, the court finds it unnecessary to address other motions presently before it. Further, this disposition does not de-termine the ultimate guilt or innocence of the defendants to the criminal charges.