**UNITED STATES of America**

**v.**

**Lynn Harthan SANDERSON.**

**No. 79–138(S)–Cr–J–M.**

United States District Court,
M. D. Florida,
Jacksonville Division.

May 13, 1980.

---

Gary L. Betz, U. S. Atty. by Thomas E. Morris, Asst. U. S. Atty., Jacksonville, Fla., for the Government.

Olan W. Meredith, St. Augustine, Fla., for defendant.

## MEMORANDUM OPINION

MELTON, District Judge.

This cause is before the Court on Defendant Lynn Harthan Sanderson's Motion to Dismiss Count I of the Indictment filed on December 14, 1979. The indictment charges the defendant with violating the provisions of Title 18 U.S.C. § 371 in that she willfully and knowingly conspired with Charles D. Griggs and Frederick Allen Kirschwing to violate Title 18 U.S.C. §§ 472 and 473. Sanderson contends the government breached its promise not to prosecute her, which she received in exchange for her cooperation in the government's investigation of certain counterfeiting activity. In the alternative, should the Court deny the defendant's motion to dismiss, the defendant has moved the Court to suppress all statements made by her pursuant to the government's promise, together with any evidence derived from those statements. The Court held an evidentiary hearing on these matters on January 28, 1980.

During the spring of 1979, the government was investigating the passing of counterfeit fifty–dollar bills in the Jacksonville, Florida, area. Sanderson, Griggs and Kirschwing became the focal point of that investigation with indictments being re-

turned by the Grand Jury against Griggs on May 3, 1979, and against Kirschwing on May 31, 1979. In an attempt to gain the defendant's cooperation in its case against Griggs and Kirschwing, the government agreed not to seek an indictment against the defendant should she provide certain information that would assist the government in its investigation. The agreement between Sanderson and the government is set forth in a two–page letter from Assistant United States Attorney Thomas E. Morris dated May 29, 1979, and addressed to the defendant's counsel. The letter (a copy of which is attached as an appendix to the Court's opinion) reads in pertinent part:

.    .    .    .    .

It is our further understanding that Miss Sanderson is willing to relate the events that occurred on the trip to Georgia and any conversations she may have had with Mr. Kirschwing or others concerning counterfeit bills and further that she will relate any knowledge she may have as to Kirschwing's possible whereabouts.

Based on this understanding the government represents that no Federal criminal charges concerning counterfeit money will be filed against Miss Sanderson in Jacksonville or the Southern District of Georgia. In addition the government agrees that any statements made by Miss Sanderson pursuant to this agreement to Secret Service agents or to a Federal Grand Jury will not be used against her in any criminal prosecution. This, of course, would not prevent the filing of perjury charges should any statement she makes under oath be untrue. The government is interested only in learning the truth. In addition, if any of the information on which the government is basing this understanding turns out to be incorrect, in other words if the government learns that she has been involved in criminal activity of which we are unaware, charges relating to any such activity could be filed against her.

.    .    .    .    .

Pursuant to the above agreement, Sanderson met with government agents on May 30, 1979, and furnished them with a detailed statement concerning her involvement with Kirschwing in the passing of counterfeit bills and her knowledge of Kirschwing's association with Griggs. That same day, Sanderson testified before the Grand Jury concerning these matters.

During her May 30th interview, the defendant was questioned regarding the whereabouts of Kirschwing. Sanderson told the government agents, and later the Grand Jury, that she had neither knowledge of his whereabouts nor had she heard from Kirschwing since May 16, 1979. The testimony received at the evidentiary hearing, held in January, reflects the importance to the government of locating and interviewing Kirschwing prior to June 18, 1979, the date on which Griggs was scheduled to be tried.

Cognizant of the fact that Kirschwing was the defendant's boyfriend, the government thought it likely that he would be contacting her. For that reason, on June 18, 1979, the government questioned the defendant concerning the location of Kirschwing and she again replied that she was unaware of his whereabouts. Griggs' trial proceeded as scheduled without the government having interviewed Kirschwing. Subsequent to the trial, which resulted in Griggs' acquittal, Kirschwing voluntarily surrendered to the authorities. Later, the government learned that Sanderson had, in fact, been in contact with Kirschwing early in June and knew, at least for a brief period of time, where he was hiding. Believing that Sanderson had violated the agreement to cooperate, the government obtained this indictment on November 28, 1979.

The government contends that the failure of Sanderson to immediately and voluntarily inform them that she had been in contact with Kirschwing is tantamount to a breach of her agreement with the government and therefore the government is relieved of its promise not to prosecute. The defendant testified at the evidentiary hearing that for

approximately one week in early June, 1979, she knew where Kirschwing was staying, that she sent him money via letter, and that she telephoned him on several occasions. The defendant asserts, however, that she did not believe that the agreement placed an affirmative duty upon her to volunteer information to the government. Instead, the defendant argues that the agreement merely required that she respond truthfully to all questions the government would ask. As to her knowledge of Kirschwing's whereabouts, the defendant maintains that during the brief period of time when she knew where he was, she was not asked by the government if she had such information. At all other times when questioned as to Kirschwing's location, and specifically on the June 18th occasion, the defendant insists that she truthfully responded that she did not know.

This is not a case involving a formal grant of statutory immunity under 18 U.S.C. §§ 6001, et seq. (1976). Therefore, the Court's inquiry into the validity and enforceability of the agreement at issue is based upon cases which have dealt with informal offers or promises of immunity or leniency. One of the earliest of such cases casts some doubt on whether a promise not to prosecute on certain charges in return for cooperation in obtaining evidence against others is a permissible defense. *See Whiskey Cases*, 99 U.S. 594, 598–606, 25 L.Ed. 399 (1878). More recent cases, however, have uniformly held that such promises are legally enforceable. *United States v. Stevens*, 601 F.2d 1075 (9th Cir.), *cert. denied*, 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979); *United States v. Rodman*, 519 F.2d 1058 (1st Cir. 1975); *United States v. De Sena*, 490 F.2d 692 (2d Cir. 1973); *United States v. Carter*, 454 F.2d 426 (4th Cir. 1972), *cert. denied*, 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974); *United States v. Minnesota Mining & Mfg. Co.*, 428 F.Supp. 707 (D.Minn.1976), *aff'd*, 551 F.2d 1106 (8th Cir. 1977); *In re Kelly*, 350 F.Supp. 1198 (E.D.Ark.1972); *United States v. Robbins*, 337 F.Supp. 1050 (N.D.Ohio 1972); *United States v. Paiva*, 294 F.Supp. 742 (D.D.C.1969).

■ Although the Fifth Circuit Court of Appeals has not directly considered the validity of informal promises of immunity, two of its recent cases suggest that where the government has given such a promise, the terms of the promise should be binding upon the government. *United States v. Weiss*, 599 F.2d 730 (5th Cir. 1979); *United States v. Calimano*, 576 F.2d 637 (5th Cir. 1978). Additionally, the Court notes that in an analogous situation involving a government promise relating to a plea agreement, the Court of Appeals required that the government abide by its agreement. *Geisser v. United States*, 513 F.2d 862 (5th Cir. 1975). *See also Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (enforcing oral promise of prosecutor not to make recommendation at sentencing). The Court, therefore, concludes that the agreement is binding and may be raised by the defendant as a defense to the instant prosecution. The Court must now decide whether the defendant sufficiently complied with the terms set forth in the agreement.

The agreement required that: (1) the defendant relate the events that occurred on a trip to Georgia with Kirschwing, (2) the defendant describe any conversations she may have had with Kirschwing or others concerning counterfeit bills, and (3) the defendant relate any knowledge she may have as to Kirschwing's whereabouts. The government argues that Sanderson should not be afforded immunity in the instant case because she failed to live up to her part of the agreement in that she did not volunteer information regarding Kirschwing's whereabouts. The government does not dispute that the defendant fulfilled the first two requirements of the agreement. Further, the government does not contend, nor does the evidence suggest, that the defendant was at any time untruthful in her responses. This the Court finds noteworthy since the letter emphasizes in two places that the government was "interested only in learning the truth."

■ The Court does not agree with the government's contention that the agree-

ment required the defendant to become an active informant. Rather, the Court finds that, with respect to Kirschwing's whereabouts, the agreement simply required the defendant to provide the government with any information she possessed as of her May 30th interview, and to respond truthfully, if questioned, on subsequent occasions. In view of the fact that a government attorney drafted the terms of the agreement, and because a waiver of substantial constitutional rights was made in reliance thereon, the Court is of the opinion that the ambiguity arising over the defendant's obligation should be construed against the government. *Cf. Craddock v. Greenhut Construction Co.,* 423 F.2d 111 (5th Cir. 1970) (ambiguous language of contract should be construed against drafting party). *See also* 17 Am.Jur.2d, *Contracts,* § 276 (1964). Had the government wished to place a continuing responsibility upon the defendant to contact its agents in the event that she received information regarding Kirschwing's whereabouts, the government should have specifically informed Sanderson of this requirement in its letter to her counsel. Inasmuch as the Court believes that the defendant honestly applied her reasonable interpretation of the agreement regarding Kirschwing's whereabouts, and because she fulfilled the government's expectations as to the first and second requirements of the agreement, the Court is satisfied that the defendant discharged her obligations under the agreement.

 Having determined that the defendant fully complied with the terms of the agreement entered into with the government, the Court must decide whether dismissal of the indictment is the appropriate remedy. If the government had promised only *use* immunity for the defendant's cooperation, it would be sufficient for this Court to prohibit the government from using any of the defendant's promise–induced statements against her, together with any evidence derived therefrom. *See, e. g., Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). This is not the situation, however, in the instant case. In the present case, the government in the written agreement clearly promised *transactional* immunity. Because the Court has found that the government received the benefit of its part of the bargain with the defendant, the Court must in turn ensure that the defendant receive the promised immunity. Although drastic, the Court believes that dismissal of the indictment is the only means available to the Court of fulfilling the promise of the prosecutor and at the same time protecting the integrity of the judicial system. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971). Accordingly, the Court will dismiss the indictment against the defendant, Lynn Harthan Sanderson. In light of the Court's dismissal of Count I of the Indictment, it is unnecessary to address the defendant's alternative motion to suppress.